IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 2 8 2012

JULIA C. DUDLEY, CLERK
BY: /s/
    DEPUTY CLERK

| | |
|---|---|
| CALVIN PERRY, | ) CASE NO. 7:12CV00245 |
| | ) |
| Petitioner, | ) |
| | ) MEMORANDUM OPINION |
| vs. | ) |
| | ) |
| HAROLD CLARKE, DIRECTOR, | ) By: James C. Turk |
| | ) Senior United States District Judge |
| Respondent. | ) |

Calvin Perry, a Virginia inmate proceeding pro se, filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, alleging that officials of the Virginia Department of Corrections ("VDOC") have miscalculated his good conduct time and his term of confinement, in violation of his constitutional rights. Upon review of the record, the court concludes that the respondent's motion to dismiss must be granted.

I

Perry's § 2254 petition asserts that in 2009, after VDOC officials reduced his good time earning rate from Level 1 to Level 2 because of a disciplinary infraction, his anticipated mandatory parole release date ("MPRD") changed from 2020 to 2025. After officials restored Perry to a good time earning rate of Level 1 on December 17, 2011, his MPRD changed from 2025 to 2023. Perry contends that by miscalculating his good conduct time, VDOC officials wrongfully increased his term of confinement, in violation of his constitutional right to due process and to be free of ex post facto increases in punishment. As relief, Perry asks the court to order officials to change Perry's MPRD to 2020 or 2019.

The respondent filed a timely motion to dismiss,[1] asserting that VDOC officials have correctly calculated Perry's MPRD.[2] Perry responded, making the matter ripe for disposition.

## II

### A. VDOC Good Time Systems

Calculation of Perry's term of confinement involves the operation of two different good time systems. On parole eligible sentences for offenses committed before January 1, 1995, and for misdemeanor sentences, under Virginia Code Ann. §§ 53.1-198 to 53.1-202, an inmate may earn a good conduct allowance ("GCA"). For GCA sentences, an inmate may earn good time in one of four good time earning levels, ranging from 30 days of good time for every 30 days served in Level 1 to 0 days of good time earned while in Level 4. GCA credit is applied to reduce the time the inmate serves before his mandatory parole release date ("MPRD"), which is the date on which he must be released from prison to be supervised by the parole board. See Coffin v. Murray, 983 F.2d 563, 566 (4th Cir. 1992).

On sentences for felony offenses committed on or after January 1, 1995, under Virginia Code Ann. §§ 53.1-202.2 to 53.1-202.3, an inmate may acquire earned sentence credit ("ESC"). For ESC sentences, an inmate may only earn a maximum of 4.5 days of earned sentence credits for every 30 days served.

---

[1] The court denies Perry's motion for default judgment. Perry asserts that the respondent did not file the motion to dismiss within 30 days of the June 15, 2012 service order. Court records indicate, however, that the respondent filed the motion to dismiss within 30 of receipt of service as the service order directed. See ECF Nos. 2, 8, 9.

[2] The respondent does not contend that Perry has any available state court remedy that he has not exhausted. Perry raised his current claim in a petition for a writ of habeas corpus in the Supreme Court of Virginia. The Court dismissed the petition by order dated April 20, 2012, finding that "habeas does not lie in this matter . . ." Pet. Ex. 1 (ECF No. 1-1, p. 1.) (citing Carroll v. Johnson, 685 S.E.2d 647, 652 (2009)).

2

Officials enter the inmate's sentence information, including good time earning rate changes, into the Virginia Coris Offender Sentence Calculation System, which generates an anticipated MPRD.  At any given time, the MPRD is based on the assumption that the inmate will continue earning good time at the same level until his release date.  Coffin, 983 F.2d at   If an inmate's good time earning rate is reduced, his new MPRD will be later, because he is no longer earning good time at the rate predicted by his prior MPRD.  Id.  Thus, the MPRD is not a fixed date.  Id.

### B. The Respondent's Evidence

The respondent submits an affidavit from Wendy K. Brown, Manager of the Court and Legal Services ("CLS") Section for the VDOC.  Based on the following information, Brown asserts that to the best of her knowledge, Perry's good conduct time has been correctly calculated and credited against his term of confinement.

On November 8, 1977, the Sussex County Circuit Court sentenced Perry to 40 years for first degree murder and one year for a related offense.  Perry entered the VDOC for service of that sentence in 1978.  Other courts sentenced Perry to additional prison terms for other convictions:  three years for escape in 1980; ten years for grand larceny with five suspended, in 1993; 12 months for simple assault in 2000, with all but four months suspended; and a life sentence for rape in 2001, with all but 25 years suspended.  Officials have also changed Perry's good time earning level several times during his VDOC custody.

On December 1, 2002, officials assigned Perry to Level 1, which allowed him to earn 30 days GCA credit per 30 days served against his total, parole eligible sentence of 74 years and four months imprisonment.  SLS sentence updates issued on September 21, 2006, and January

19, 2007, indicated that at his then-Level 1 good time earning rate, Perry's anticipated MPRD was October 13, 2020.

On May 1, 2007, the Chesterfield County Circuit Court sentenced Perry to five years, with three years suspended, for possession of an imitation weapon of terror with intent to intimidate (an offense committed on August 2, 2005). Perry was required to serve this parole ineligible sentence before continuing to serve his parole eligible sentences and while serving it, could earn only ESC credit. Thus, beginning May 1, 2007, Perry earned only 4.5 days credit per 30 days served. A CLS sentence update issued on May 23, 2007, reflected this new good time earning rate and indicated that Perry's anticipated MPRD was July 11, 2022. The computer calculated this MPRD based on the assumption that Perry would earn the ESC Level 1 credit for the remainder of his incarceration. Officials placed Perry in Level 2 on December 17, 2008, which reduced his ESC earning rate to 3 days for every 30 days served against the Chesterfield parole ineligible sentence. A CLS sentence update issued on January 14, 2009, reflected change to Level 2 and indicated that Perry's new anticipated MPRD at that good time earning rate was March 26, 2025.

After Perry completed the Chesterfield County interrupt sentence, he resumed serving his remaining parole eligible sentences at Level 2 of the GCA system, earning 20 days good time for every 30 days served. On December 17, 2011, Officials placed Perry in Level 1, and he began earning 30 days good time for every 30 days served. A CLS sentence update issued February 3, 2012, indicated that Perry is now serving a total sentence of 76 years and four months imprisonment, reflected the change to GCA Level 1, and projected his new anticipated MPRD as January 3, 2023.

### III

Liberally construed, Perry claims that VDOC officials have miscalculated his good conduct time under Virginia statutory law, which will cause him to serve two more years in prison than he should, in violation of his due process rights.[3] Review of the evidence demonstrates that Perry's petition must be dismissed.

When a state creates a protected liberty interest in good-time credits earned, the inmate is entitled "to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to ensure that the state created right is not arbitrarily abrogated." Ewell v. Murray, 11 F.3d 482, 488 (4th Cir. 1993) (citing Wolff v. McDonnell, 418 U.S. 539, 557 (1974)). A prisoner's due process rights are limited, however. A prison regulation creates a liberty interest and implicates federal due process protections only where the regulation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." See Sandin v. Conner, 515 U.S. 472, 484 (1995). Because custody and security status and good time earning rates are subject to change, a particular adjustment to these classifications alone does not implicate federal due process protections. See id.; see also Garrett v. Angelone, 940 F. Supp. 933, 943 (W.D. Va. 1996).

Perry does not, and could not in light of Sandin, claim that he enjoys any federal procedural protection against the changes to his good time earning rate over the years. If Perry demonstrated that VDOC officials arbitrarily deprived him of credit against his sentences for good conduct time he had already earned, however, he might be entitled to relief

---

[3] Perry's assertion that the change to his MPRD somehow constituted a violation of the Ex Post Facto Clause has no merit, as he fails to cite any change in law that increased the quantum of punishment for his crimes. See Lynce v. Mathis, 519 U.S. 433, 441 (1997) ("To fall within the ex post facto prohibition, [ (1) ] a law must be retrospective – that is, it must apply to events occurring before its enactment – and [ (2) ] it must disadvantage the offender affected by it, by altering the definition of criminal conduct or increasing the punishment for the crime.") (internal quotations and citations omitted).

under Wolff, supra. Perry makes no such showing. The only specific evidence Perry offers in response to the motion to dismiss is a CLS sentence update from November 2001, indicating that his MPRD at that time was November 29, 2019. Perry asserts that after he achieved a Level 1 good time earning rate in 2011, his MPRD should have reverted to 2019, rather than early 2023. Perry's prediction of his proper MPRD does not take into account the additional two-year, non-parole eligible sentence he received in 2007 that interrupted his service of his parole eligible sentences. His prediction also does not account for the lengthy period during service of that interrupt sentence when he earned good time at the much lower ESC earning rates and his MPRD rested on the computer program's assumption that Perry would continue to earn good time at those lower rates for the rest of his confinement. The respondent's evidence clearly demonstrates that once Perry completed the interrupt sentence, his good time earning rate, and the computer's calculation of his MPRD, returned to the proper GCA levels.

In the face of the respondent's specific evidence of the manner in which his MPRD has been calculated, Perry offers no documentation or specific allegation indicating that he has not received credit for all good conduct time he has earned, in light of the new sentence received in 2007 and the lower good time earning rates that applied during his service of that sentence. Therefore, the court concludes that Perry has no ground for relief under § 2254 and grants the motion to dismiss. An appropriate order will issue this day. The Clerk is directed to send copies of this memorandum opinion and accompanying order to petitioner.

ENTER: This ___ day of December, 2012.

_____
Senior United States District Judge